The State vs. The St. Croix Boom Corporation and another.

THE STATE vs. THE ST. CROIX BOOM CORPORATION and another.

*April 17 — May 15, 1884.*

SUPREME COURT: ORIGINAL JURISDICTION. *(1) Leave to proceed essential. (2) Injunction: Obstructions in navigable river on state boundary: Ordinary remedies adequate.*

1. When the original jurisdiction of the supreme court is invoked, leave to proceed must, in all cases, be first obtained from the court itself, upon a *prima facie* showing that the cause is a proper one for its cognizance.

2. The original jurisdiction of the supreme court will not be exercised to remove obstructions from a navigable river upon the boundary of the state. The state has assumed no trust to keep such rivers free for navigation, and the ordinary remedies in the circuit court are adequate.

This action was commenced in this court by the attorney general, on behalf of the state, against the *St. Croix Boom Corporation* and its general superintendent, to restrain them from maintaining certain obstructions in the main channel of the St. Croix river, and from otherwise obstructing the free use and navigation thereof, so far as the same is within

The State vs. The St. Croix Boom Corporation and another.

the limits or jurisdiction of the state of Wisconsin. The allegations of the complaint will sufficiently appear from the opinion.

The defendants demurred to the complaint on the grounds: (1) that it does not state facts sufficient to constitute a cause of action; (2) that the plaintiff has not the legal capacity to maintain the action; (3) that the court has no jurisdiction of the subject of the action; and (4) that several causes of action have been improperly united.

Subsequently, the defendants filed a petition for the removal of the cause to the circuit court of the United States· for the western district of Wisconsin, upon the grounds: (1) that the defendants are citizens of the state of Minnesota; and (2) that the determination of the issues involves the construction of federal statutes.

In support of the motion for the removal of the cause there was a brief signed by *John C. Spooner*, attorney, and *J. N. & I. W. Castle* and *Clapp & Macartney*, of counsel, and oral argument by *Mr. J. N. Castle* and *Mr. Clapp*.

*Edward P. Vilas, contra.*

Upon the demurrer to the complaint there was a brief on behalf of the defendants, signed by *John C. Spooner*, attorney, and *J. N. Castle* and *N. H. Clapp*, of counsel, and oral argument by *Mr. Castle* and *Mr. J. H. Ives*.

*Edward P. Vilas*, of counsel, for the plaintiff.


COLE, C. J.   The learned attorney general commences this complaint with the averment or statement that he brings this suit in the name and on behalf of the state, "*leave for that purpose having been first had and obtained.*"   This was doubtless regarded as a mere formal statement of a fact, under the impression on the part of the attorney general that it was immaterial whether it was true or not.   Its accuracy surely is disproved by the record, which shows that this court never granted leave to bring the suit.   The bill

was filed in vacation, July 28, 1883, when, from the necessity of the case, it was impossible to obtain leave of the court to file it. It is certainly unnecessary to remind the learned attorney general and other counsel of the rule of this court, that, in all cases in which it is sought to put its original jurisdiction in motion, special leave to proceed must be first obtained from the court itself, upon a *prima facie* showing that the cause is one of which it is proper for this court to take cognizance. That rule was announced, in substantially this language, in *Att'y Gen. v. Railroad Companies*, 35 Wis., 521, and *Att'y Gen. v. Eau Claire*, 37 Wis., 444; and it has been uniformly acted upon since those decisions were made. Our experience proves the wisdom and justness of the remark of the chief justice in the *Eau Claire Case*, that "we are called upon for special caution in cases of injunction, because the writ does not indicate the jurisdiction." We therefore trust that in future no attempt will be made to call into exercise the original jurisdiction of this court in any case, more especially in an injunction suit, without special leave to proceed is first had and obtained from the court itself. The rule was announced in the first place as a guide to counsel, and it must be understood that for its own protection the court will see that it is observed. We deemed it our duty to make these preliminary remarks as to the inaccuracy of the statement in the complaint that leave of the court was first obtained to commence this suit. We will now proceed to consider the case on its merits.

The third ground of demurrer assigned is that it appears from the complaint itself that this court has no jurisdiction of the subject of the action. Properly, then, we must first determine the question of jurisdiction, or whether the cause is one of which this court should take original cognizance. Obviously, if that point is decided against the plaintiff, a consideration of the other questions discussed by counsel,

both on the motion to remove the cause to the United States circuit court and on the demurrer, becomes unnecessary.

The bill charges, in substance, that the defendant corporation,— which was created and organized under the laws of the state of Minnesota, and all of whose officers are non-residents of this State,— has constructed and now maintains a system of booms, and large and permanent structures, of cribs of stone and heavy timber, above the head of Lake St. Croix, upon and across the main channel of the St. Croix river, in the deep and navigable waters thereof, within the limits of this state, which booms and obstructions constitute a serious and permanent injury and obstruction to the navigation of the river by boats and water-craft, to the entire suspension of all commerce and trade on the river. The relief asked is that the writ of injunction be issued from this court enjoining and restraining the defendant corporation, its officers, etc., from continuing and maintaining these booms, cribs, and obstructions upon the St. Croix river, in the main channel thereof, or from otherwise obstructing the free use and navigation of the river, so far as the same is within the limits and jurisdiction of this state.

These are the essential grounds or material facts upon which it is asked that this court take original jurisdiction of this injunction bill, and hear and decide the cause upon its merits. The question is, Do they present a case calling for the exercise of such a jurisdiction? We are clearly of the opinion they do not. It will be borne in mind that while this court decided in the *Railroad* and *Eau Claire Cases* that it had, under the constitutional grant of power, original jurisdiction, on behalf of the state, of a suit in the nature of an injunction bill in chancery, yet that the scope of this jurisdiction was restricted to a particular class of cases. Its original jurisdiction in that regard could not be measured by the jurisdiction over writs of injunction conferred upon the circuit courts, because those courts take the writs with

unlimited jurisdiction over them. This whole subject is discussed in such a masterly and exhaustive manner by the chief justice in the above cases that we cannot do better than quote his language. In the *Railroad Case* he says: "Other original jurisdiction is prohibited to this court, and the jurisdiction given by the writs is essentially a limited one. Those courts take the prerogative writs as part of their general jurisdiction, with power to put them to all proper uses. This court takes the prerogative writs for prerogative jurisdiction, with power to put them only to prerogative uses proper." 35 Wis., 522. Again, he says: "It is not enough to put in motion the original jurisdiction of this court that the question is *publici juris;* it should be a question *quod ad statum reipublicæ pertinet:* one 'affecting the sovereignty of the state, its franchises or prerogatives, or the liberties of its people.'" 37 Wis., 442. . . . "It would be straining and distorting the notion of prerogative jurisdiction to apply it to every case of personal, corporate, or local right, where a prerogative writ happens to afford an appropriate remedy. To warrant the assertion of original jurisdiction here, the interest of the state should be primary and proximate, not indirect or remote; peculiar, perhaps, to some subdivision of the state, but affecting the state at large in some of its prerogatives; raising a contingency requiring the interposition of this court to preserve the prerogatives and franchises of the state in its sovereign character; this court judging of the contingency in each case for itself. For all else, though raising questions *publici juris,* ordinary remedies and ordinary jurisdictions are adequate. And only when, for some peculiar cause, these are inadequate, will the original jurisdiction of this court be exercised for the protection of merely private or merely local rights." 37 Wis., 444.

Now, applying these remarks to the present case, can it justly be said that the matters stated in the complaint show

that the prerogatives and interests of the state at large are involved in such a sense as to require the interposition of this court to preserve and protect them? It seems to us not. If any person should put an unlawful structure in the Mississippi river, which seriously obstructed the navigation of the river, it would involve the sovereign prerogatives of the state in the same manner, to the same degree, the defendants' acts do. And yet we think it would not be seriously claimed that the original jurisdiction of this court should be exercised to remove such structure, for the obvious reason that the ordinary jurisdiction of the circuit court is ample to vindicate and protect both public and private rights. Indeed, that would be the appropriate jurisdiction to be invoked in the case supposed. Any erection or intrusion into navigable waters, whether made by the riparian proprietor or by a stranger, is subject to the paramount right of use in the public. If the erection or intrusion is of such a character as to seriously impede or obstruct navigation, it becomes a public nuisance, liable to be abated or removed in a proper proceeding. These principles are familiar, and have often been recognized by this court. (See *Diedrich v. N. W. U. R'y Co.*, 42 Wis., 248, and cases cited in the opinion.) So it is obvious, if the booms and structures erected and maintained by the defendant corporation in the navigable waters of the St. Croix river, within the limits of this state, amount, in fact, to a public nuisance, the state has an ample remedy to vindicate the public right. It is needless to say such remedy is by a public prosecution against the defendant for maintaining a public nuisance in water capable of, and in fact used for, navigation. The remedy is adequate and complete in the circuit courts by indictment or other proper proceeding. This is elementary law, which calls for no citation of authorities in its support. In that way the public right of navigation, certainly upon the waters of the river in this state, can be fully vindicated and protected.

If these structures, which are a public nuisance, in addition also cause some special and peculiar injury to an individual, that individual has an adequate remedy in the circuit court to recover all damages which he has sustained by it. *Enos v. Hamilton*, 24 Wis., 658; *S. C.*, 27 Wis., 256, are authorities to that point, if any are needed to so plain a proposition. In such an action the nuisance, perhaps, may be abated if necessary for the protection of the rights of the party injuriously affected by it. R. S. 1878, ch. 137; *Remington v. Foster*, 42 Wis., 608. But, however that may be, surely there are ample remedies for removing the obstruction to navigation, and of securing the public right of the use of the highway by water.

There is no occasion or necessity for invoking the original jurisdiction of this court by injunction bill for the purpose of restraining the defendant corporation from continuing the unlawful obstructions which, it is alleged, it has erected in the channel of the river within the limits of this state. There is no peculiarity about the case, or in the facts stated, which distinguish it from any unlawful obstruction to the navigation of a boundary river, or which brings the case fairly within the spirit and object of the original jurisdiction of this court, as that jurisdiction has been defined and limited in the *Railroad* and *Eau Claire Cases*. There is really no exceptional feature in the case; no fact alleged which shows that it cannot be left, like all cases of the kind, to the jurisdiction of the circuit courts. If we entertain jurisdiction of the case, this court might be called upon with equal reason to exert its original jurisdiction in all cases where similar obstructions existed, so that this court, instead of being an appellate tribunal to review the decisions of the circuit courts, would really assume and exercise the functions of those courts. It is safe to say that the exercise of such a jurisdiction was never intended by the framers of the constitution to be conferred upon it. It would be inconsistent

with the judicial system which was organized and established by the fundamental law. It is only our duty in a proper case "to interpose the prerogative writ of the state to secure the prerogative right of the state from infringement," and see to it that we are not misled in practice "into the exercise of original jurisdiction of the writ in its ordinary use as a judicial writ." It clearly is not necessary that this court should take original jurisdiction of this cause, and we decline to do so.

The learned counsel for the plaintiff insists that the averments of the complaint present a case essentially like the *Eau Claire Case*. But the leading facts of the two cases are different, which determine the question of jurisdiction. In the *Eau Claire Case*, under authority granted by the legislature, the city of Eau Claire was about proceeding to construct a dam across the Chippewa river, and this court held that, under the power granted, the dam, when constructed, might be used either for a public or a private purpose. The grant was equivocal, subject to the election of the donee of the power for either one or other of two purposes,— the one lawful and the other unlawful. As there was a discretion in the statute for the city to put the work authorized to an unlawful use, this court enjoined its construction. The river, where the dam was to be erected, was navigable, and was wholly within this state. The court, while declaring its unwillingness to extend its original jurisdiction to cases of encroachment in mere local highways, whether by land or water, yet held that the navigable waters in this state which lead into the Mississippi and St. Lawrence rivers constitute a peculiar class of highways. As to them it is said: "They are a trust from the federal government to the state, accepted by the state, which the state is bound to keep as highways forever free to the people of the state and of the United States." This was the ground upon which the original jurisdiction of the court was rested.

The State vs. The St. Croix Boom Corporation and another.

But there are no such grounds for asserting original jurisdiction here. The state has assumed no trust or duty to keep the St. Croix river free for navigation. That is a boundary river; only a portion of its waters is actually within the territorial limits of the state. And while the state has jurisdiction over its navigable waters, that jurisdiction is concurrent with the jurisdiction of the state of Minnesota. The writs of the courts of this state would only run to enjoin obstructions in the river within its boundaries. This feature distinguishes the case from the *Eau Claire Case*, where this court had full jurisdiction over the river, and could prevent by its writ the construction of any portion of the dam. The legislature of Minnesota has doubtless authorized the obstructions complained of within its limits; at all events, this is a fair inference from the complaint. And while it may be the duty of this state, as announced in the *Eau Claire Case*, to keep the rivers over which it has complete jurisdiction free from obstructions to navigation, it has assumed no such duty or trust in respect to boundary rivers over which another state has concurrent jurisdiction. This conclusion inevitably follows from the nature of the case.

It may be, as defendant's counsel suggest, that the doctrine laid down in the *Eau Claire Case* is advanced ground upon this subject. It is not necessary now to say whether that criticism is well founded or not. Certainly, we have no intention of extending the doctrine of the *Eau Claire Case* to one which does not, in its material facts, come fully within its principle and reasoning.

It results from these views that the complaint must be dismissed. Of course, the motion to remove the cause to the federal court falls with the cause itself.

*By the Court.*— Complaint dismissed.

NOTE BY COUNSEL.— In justice to the attorney general I desire and am permitted to say that he is in no degree responsible for the misunderstanding apparent from the opinion filed in this case; and while.

it is not, perhaps, mete that I should here enter into any detailed statement, yet I may be properly permitted to say that I supposed, distinctly and unequivocally, that I had procured due and sufficient leave to proceed in this action. The attorney general courteously, and as customary in such matters, granted the use of his name. I conferred with a majority of the court in vacation, and on the first day of the term, in open court, called attention to the action. It was placed on the calendar, argued and heard on the merits in its order, the court not saying a word to me as to any irregularity, nor asking how it came there, if irregularly there; and the further fact that the court decided the action on the issue raised to the jurisdiction, will certainly go far towards exonerating me from any implied imputation of intentionally violating a rule of practice of which I was fully cognizant at the time, and endeavoring to comply with. Indeed, I obtained the understanding that in case objection was urged by the defense on this ground, on motion leave could be granted *nunc pro tunc* if the bill disclosed merits *prima facie*. It is not seemly that I should, in view of the remarks of the learned chief justice, discuss it. Suffice it to say that whatever may be properly inferred from the opinion should not be applied to the attorney general; he had no personal participation therein.

It is deemed by myself and Chief Justice COLE but justice to the attorney general that I should subjoin this note.

EDWARD P. VILAS, of Counsel for Plaintiff.