## VINE *et al.* v. JONES, Judge, *et al.*

1. Laws 1890, Chap. 78, § 17, provides that whenever the county judge in any probate proceeding is related within the fourth degree to any person interested, the fact shall be certified to the circuit court of the county. Section 18 provides that on the filing of a copy of the certificate in the circuit court it shall have jurisdiction of the estate, and may make all orders that might have been made in the county court. *Held,* that on the presentation of an application to the circuit court, showing that a son of the county judge was interested in a probate proceeding before him, it was error to refuse a mandamus by which it might acquire jurisdiction to determine the existence of such disqualification.

2. Under Const. Art, 5, § 2, conferring on the supreme court a general superintending control over all inferior courts, such court will grant a mandamus compelling a circuit court to receive an application to take jurisdiction to determine the existence of an alleged disqualification of a county judge in a probate proceeding.

3. Under Laws 1890, Chap. 78, § 17, providing that a county judge shall be disqualified in any probate proceeding whenever he is related within the fourth degree to any person interested, a judge is disqualified where

his son is prosecuting a proceeding before the court, and his compensation is dependent on the success of the litigation.

FULLER, P. J., dissenting.

(Opinion filed March 7, 1900.)

Original application for mandamus by Mary A. Vine and others against Joseph W. Jones, judge of the circuit court of the Second judicial circuit, and another.    Granted.

No briefs filed.

*U. S. G. Cherry* and *T. H. Null*, for plaintiffs.

*A. B. Kittredge, Paul T. Wilkes*, and *H. E. Judge*, for defendants.

HANEY, J.   The purpose of this proceeding is to compel the circuit court to determine whether it shall assume jurisdiction of a certain probate matter pending in the county court of Minnehaha county.   On February 28, 1900, the circuit court made the following order: "Mary A. Vine, Wm. McClelland, Francis McClelland, Thomas McClelland, Margaret Bulklely, and E. J. Taber, Special Administrator of the estate of John McClellan, Deceased, Plaintiffs, vs. William A. Wilkes, Judge of the County Court of Minnehaha County, and William Van Eps, Defendants. The annexed application was presented to the court on this 28th day of February, 1900, Messrs W. H. Lyon, C. O. Bailey, C. P. Bates, and T. H. Null, attorneys for plaintiffs, appearing in behalf of plaintiffs.   The court upon consideration, as now advised, finds said application should be denied.   Now, therefore, it is ordered that said annexed application be, and the same is hereby, in all things denied.   By the court.   Joseph W. Jones, Judge."   The questions to be considered are whether the circuit court erred in denying the application referred to in the

foregoing order, and, if it did, what relief may be afforded plaintiffs in this proceeding. For the purposes of the first inquiry it must be assumed that the facts alleged in the application are true. The application was made upon an affidavit wherein it is averred, *inter alia*, that John McClellan, a resident of Minnehaha county died intestate, without known heirs, or next of kin, at Sioux Falls, in August, 1899, leaving an estate, consisting of real and personal property, valued at about $40,000; that the plaintiffs William, Thomas and Frances McClelland, Mary A. Vine, and Margaret Bulklely are, or claim to be, brothers and sisters of deceased; that immediately after McClellan's death the plaintiff Taber, having been appointed special administrator, duly qualified and entered upon the discharge of his duties; that the Honorable William A. Wilkes is the judge of the county court of Minnehaha county; that on or about September 2, 1899, the county court appointed Paul T. Wilkes, Esq., who is a practicing attorney and counselor at law, residing at Sioux Falls, and a son of Judge WILKES, as attorney for the unknown and nonresident heirs of the deceased; that subseqently Paul T. Wilkes proceeded to Ireland, where he became acquainted with Mary McClelland and Margaret Hammill; that while Paul T. Wilkes remained in Ireland he entered into an agreement and arrangement with Mary McClelland and Margaret Hammill, as affiant is informed and believes, whereby Paul T. Wilkes and one Thomas Kilpatrick became their attorneys in the matter of the prosecution, in the county court, before defendant William A. Wilkes, of the claim and petition of Mary McClelland and Margaret Hammill, thereafter to be filed in the county court, claiming to be the only surviving heirs at law of John

McClellan, deceased; that under this agreement, as affiant is informed and believes, the fees of Paul T. Wilkes and of Kilpatrick for their services became conditioned, dependnet and contingent upon the success of Mary McClelland and Margaret Hammill in establishing their heirship in the county court; that, in the event or such success, and in the event that such estate should become and be adjudged to be the property of Mary McClelland and Margaret Hammill, a certain share, interest, or amount of the estate should be turned over and transferred to Paul T. Wilkes and Thomas Kilpatrick as compensation for their services as attorneys in such matter, and that in the same manner the expenses of Paul T. Wilkes and Kilpatrick in the management and prosecution of such claim and petition should be paid out of the estate; that, as affiant is informed and believes no other fee, commissions, or expenses were paid, or agreed to be paid by the terms of such agreement, except out of the estate of John McClellan, and in the event that the claim and petition of Mary McClelland and Margaret Hammill were sustained in the county court; that as affiant is informed and believes, Mary McClelland and Margaret Hammill are persons of exceedingly small means, and that neither of them had, at the time such agreement was made, or has since acquired, any property or means out of which to pay fees and expenses in such matter in any other manner than by turning over and transferring a portion or interest of such estate; that shortly after the death of John McClellan numerous petitions were filed in the county court by various persons claiming to be heirs at law, next of kin, or creditors of the deceased, praying that letters of administration be issued; that on the 8th day of February, 1900, the county court rendered its decision regard-

ing these petitions, and made an order appointing William Van
Eps administrator of the estate, and directed that letters of
administration should issue to him; that from the decision of
the county court in various matters relating to this estate nu-
merous appeals have been taken to the circuit court; that on or
about the 2d day of February, 1900, the plaintiff Mary A. Vine
made an affidavit, and filed the same in the county court, call-
ing the attention of the county judge to the fact of his disqual-
ification, and setting out substantially all the facts hereinbe-
fore stated with reference thereto, and requested the judge of
the county court to enter such facts of record, and certify the
proceeding to the circuit court; that a delay in the determina-
tion of the question of Judge WILKES' qualification to act in the
matter of such estate, and the effect of the various appeals and
other proceedings mentioned, would result in great loss, dam-
age, and injury to the estate, and would result in a great multi-
plicity of collateral proceedings, expenses, and litigation grow-
ing out of matters connected with the estate; that plaintiffs
are without a plain, speedy, and adequate remedy at law.

The prayer of the application presented to the circuit
court is sufficiently broad to include any relief within the
powers of that court. The law defining the jurisdiction of
county courts contains the following provisions: ''Whenever
the county judge of any county is a party to or personally in-
terested in any proceeding in any probate matter therein or
connected by blood or affinity to any person so interested near-
er than the fourth degree, or when he is named as a legatee or
devisee, or executor or trustee in a will or is a witness thereto,
such fact or facts shall be entered upon the records of such
court and certified to the circuit court of such county; *provided,*

that in case the judge is interested only as a creditor no change need be made except in relation to his claim." Laws 1890, Chap. 78, § 17. ''Upon the filing of a copy of such certificate in the office of the clerk of the circuit court, such circuit court shall have full and complete jurisdiction in all matters pertaining to such estate and may make all orders and take all proceedings therein, which might have been made or taken in the county court, if the judge thereof had not been interested or a party as aforesaid." Id., § 18. If Paul T. Wilkes is personally interested in the McClellan estate within the meaning of the statute, his father, the county judge, is disqualified. Connection by blood or affinity nearer than the fourth degree with one who is personally interested has the same effect as personal interest of the judge himself. Certainly it will not be contended that a county judge can retain jurisdiction of an estate where he has been employed as an attorney to prosecute the petition of persons claiming to be sole heirs of the deceased, and his compensation depends upon his success in establishing such claim. If the son of Judge WILKES has entered into an agreement and arrangement with Mary McClelland and Margaret Hammill whereby he and another have become their attorneys to prosecute their petition to be adjudged the only surviving heirs at law of the deceased, and under which agreement the compensation of such attorneys for their services in carrying on such litigation is conditioned, dependent, and contingent upon success, and, in the event of success, a certain share, interst or amount of the estate shall be turned over and transferred to them as compensation for their services and expenses, his father is disqualified, and all matters relating to the estate should be certified to the circuit court.   Howell v. Budd

(Cal.) 27 Pac. 749. An application, showing upon its face that the judge of the county court had become disqualified, having been presented to the circuit court, that court erred in refusing to issue an alternative writ of mandamus, order to show cause, or other process by which it might have acquired jurisdiction to hear and determine whether the alleged disqualification in fact exists. Assuming from the recitals in its order that the circuit court decided that the facts alleged in the application did not entitle plaintiffs to any relief, it was in error, because, as already shown, if such facts existed, all further proceedings relating to the estate should be had in the circuit court, and its mandate should issue to compel the county judge to make the proper certificate.

The next inquiry is whether this court should, in this proceeding review the action of the circuit court in denying plaintiffs' application. "No doubt the general rule is that an appellate court will not by mandamus proceedings, review the decision of an inferior court, nor require such court to reverse its decision, and enter a different one; and it may be that a court possessing strictly appellate powers only ought never to do this, and so the courts of many of the states have so stated the rule without qualification; but the supreme courts of Michigan, Louisiana, and Alabama have not been governed by this rule, because they have held their powers and jurisdiction, under their respective constitutions, to be more than simply appellate. The constitutions of those states, like our own, confer upon the supreme court, besides appellate jurisdiction, a general superintending control over all inferior courts. Article 5, § 2, Const. S. D. This provision materially enlarges the powers of otherwise only appellate courts, and enables them, by

means of their various writs, prerogative and remedial, to control and correct the decisions of inferior courts in special cases, and prevent injustice and irreparable injury, when the circumstances demand an immediate review, the case is urgent, and an appeal will not afford an adequate remedy." City of Huron v. Campbell, 3 S. D. 309, 53 N. W. 182. Upon a careful consideration of the peculiar circumstances disclosed in this proceeding, we deem it to be one in which this court should exercise its enlarged powers under the constitution, and grant such relief as a writ of mandamus may afford. The rights of all concerned will be conserved by having the question of the county judge's qualification speedily determined. A regard for the proper administration of justice, and justice to the county judge himself, demand that the serious charges contained in the application made to the circuit court be speedily investigated upon their merits. We are therefore of the opinion that plaintiffs are entitled to a peremptory writ of mandamus commanding the circuit court to receive plaintiffs' application, and to proceed, upon such notice as shall be legal and proper, to determine whether the judge of the county court has become disqualified to act in the matter of the estate of John McClellan deceased, and to make such preliminary and final orders as shall be necessary and proper to protect the rights of all parties in interest, preserve the estate, and in the event that it shall be determined that the county judge has become disqualified, transfer all matters relating to such estate to the circuit court.

FULLER, P. J. (dissenting). Though satisfied that proof of the contract of Paul T. Wilkes with purported heirs is suf-

ficient to wholly devest the county court of all jurisdiction, I am unable to conclude that the supervisory powers of this court should be exercised by way of mandamus to the extent of reversing a discretionary order entered in circuit court, and requiring that tribunal to proceed in the manner designated.