## IN RE SNYDER.

*March 31—May 6, 1924.*

*Courts: Appeal to supreme court: Transcript of testimony: Reporters: Outside work interfering with statutory duties: Control of supreme court over inferior judicial officer: Duty of trial and appellate court to expedite judicial business: Jurisdiction.*

1. This court has power, by virtue of its jurisdiction over a case properly before it and its control over its calendar and work, to require any inferior judicial officer to perform with reasonable diligence work that is essential to enable this court to do its work. p. 12.
2. Both the trial court and this court have jurisdiction to procure a reasonably speedy furnishing of a transcript of the evidence, but ordinarily application to hasten the furnishing of such a transcript should first be made to the trial court. p. 13.

3. Where from an affidavit submitted to this court by an attorney
   as the basis for an order requiring the reporter of the trial
   court to furnish a transcript of the evidence within a speci-
   fied time it appeared that the trial court had been applied to
   five times for such an order without avail, such facts justified
   this court in acting, especially where, if any action was to
   be effective, it must be speedy. p. 14.
4. A court reporter is not required under his appointment to do
   additional work, such as attending upon a grand jury, under
   sec. 2546f, Stats., and his plea of extra work in performing
   such duties was not ground for excusing his delay in per-
   forming his official work as court reporter. p. 14.

ORIGINAL PROCEEDING in this court. On March 31st
this court issued an order requiring *Mr. Snyder,* the official
court reporter for the Thirteenth judicial circuit, to furnish
a transcript of the evidence in the case of *July v. Adams*
within a specified time or to show cause before this court
on the 11th day of April, 1924, why he should not do so.
The order was based upon an affidavit of Philip Lehner,
Esq., alleging, among other things, that he had given an
order to *Mr. Snyder* for the transcript as early as October
26, 1923, and had repeatedly since requested that the tran-
script be furnished at an early date; that he had "on at least
five different occasions appealed to the Honorable C. M.
DAVISON, the Judge of the Thirteenth judicial circuit, to
order said reporter to furnish the transcript of the testi-
mony in this action in time that affiant might serve his case
and brief in due time, so that the case could be argued at
the May assignment. But that he has been unable to obtain
any relief whatever from the said circuit judge, and that
the said court reporter refused to furnish the transcript."

*Philip Lehner* of Princeton, for the complainant.

For the respondent there was a brief by *Lockney, Lowry
& Baird* of Waukesha.

The following opinion was filed May 6, 1924:

VINJE, C. J. This court has frequently been delayed in
its work during the last decade and longer by the fact that

cases here on appeal and placed upon a particular assignment have had to be continued because of the failure of the circuit court reporter to get out the transcript of the testimony in time for a settlement of a bill of exceptions and the timely printing of the case and briefs. The increasing frequency of such delays together with the facts alleged in the moving affidavit induced the court to take jurisdiction of the matter to the end that court reporters, the parties to an action, and trial courts might sense a little more clearly the duty that devolves upon each. In this case, as will be seen later, no blame attaches to any one for the condition that exists, and hence we can speak quite plainly without casting blame upon any of the parties involved in this inquiry.

That this court has jurisdiction to proceed originally with such an inquiry is self-evident. The case is properly here. It must be disposed of by this court. It cannot be without a transcript of the evidence being furnished by the court reporter. A delay on his part delays this court in its work and causes delay to the parties. This court, by virtue of its jurisdiction of the case and its control over its calendar and work, has power to require any inferior judicial officer to perform with reasonable diligence work that is essential to this court doing its work. Such jurisdiction need not be sought in the superintending control of this court over inferior courts, though, no doubt, it could also be found there. We prefer, however, to bottom it upon our inherent right to control over our own work and to use all reasonable and lawful means to see that it is done as expeditiously as circumstances will permit. There is much truth in the adage that justice delayed is justice denied.

Under our mode of work we put as many cases on a call as we deem we can hear, consider, determine, and write in four weeks. After such a call is made up, every case that is continued to a later assignment takes so much off from what we could have done in the given time and adds it to a later assignment. Were we lax in the rule of not per-

mitting cases to go over an assignment or two, we would find ourselves with little to do at the beginning of the year's work and with an accumulation of cases at the close of the working year.  No very great laxity in this respect would soon find us far behind in our work.  There is an insistent and well founded demand by the public for a speedy and effective administration of justice, and it has been the constant effort of this court to meet such demand, not necessarily because it is a public demand, but because it is inherently reasonable and just.  Courts are public servants, created to do public work.  They should prosecute such work not only honestly and in accordance with established law, but timely.  Clients are a part of the public and are entitled to a reasonably speedy determination of their cases. It has been the pride of this court and of courts generally of this state that litigants have had speedy justice.  And it is only when courts deeply sense the importance of avoiding unnecessary delays in the administration of the law that they will perform their true and complete function.  In the past the people through its legislature has furnished judges enough in this court so that, barring sickness, and even with considerable sickness, in the past it has been able every year to finish its calendar.  This is a fortunate situation for both the people and the court, and every reasonable effort will be made by the court to continue to annually finish its calendar. But to accomplish that desirable end it must so arrange its work that there shall be no serious interference with it. Based upon the above considerations, it is obvious that this court has the power to remove all obstacles to the speedy determination of the causes pending before it.  It is also quite evident that the trial court, even after an appeal has been taken to this court, has the power to procure a reasonably speedy furnishing of the transcript of the evidence, because the duty devolves upon the trial judge to settle the bill of exceptions, which cannot be done until the transcript is procured.  It follows that both courts have jurisdiction

to act in such a matter, and ordinarily application should first be made to the trial court. *Lyle v. Sherman,* 147 Mich. 424, 110 N. W. 932. Upon the affidavit submitted to this court it appeared that the trial court had been applied to five times without result, so it was deemed proper for this court to act, especially since if any action was to be effective it must be speedy.

We shall do no more than to state the effect of the affidavits filed, including one from *Mr. Snyder* filed after the oral argument. It seems quite clear from such affidavits and admissions made on the oral argument that no unconditional order for a transcript was made by Mr. Lehner until the latter part of February, 1924. At first he wanted the reporter to abide the result of the appeal, to be paid full fees if successful and no fees if unsuccessful. This the reporter refused. Then it seems that a process of bargaining and estimates was entered upon, the reporter standing firm, as he had a right to do, for his statutory fees, and Mr. Lehner seeking to obtain a reduction on account of the poverty of his client. So that as we read and construe the affidavits, it was not until the latter part of February that an unconditional order was placed with the reporter for a transcript. Before that time the reporter had taken on additional work in attending and reporting the sessions of the grand jury of Washington county. Such additional work, however, the reporter was not required to do under his appointment as court reporter, and the plea of extra work such as that of attendance upon the grand jury under the provisions of sec. 2546*f*, Stats. 1921, cannot be considered as an excuse for delay in the performance of the official work of a court reporter. He has no right to undertake extra work of any kind if it will seriously delay his official work. His first duty is to perform his official work. If that will permit of additional work without substantial delay of his official duties he may undertake it. If it will not, he should confine his time to his official duties.

Since it is apparent that the court reporter cannot de-

liver the transcript in time for the May assignment, which is our last assignment before the summer vacation, and since he has promised it for June or July in ample time for the September assignment, we do not find it necessary to make any order compelling its delivery at any specified time.

*By the Court.*—Motion for a peremptory order denied, with costs not exceeding $25.

A motion to amend the mandate was denied, without costs, on June 3, 1924.